OPINION
{¶ 1} Relator, The South-Western City School District Board of Education ("district") seeks a writ of mandamus to compel respondent, the Franklin County Board of Elections ("board"), to place the district's levy on the November 2, 2004 ballot. For the following reasons, we grant the requested writ of mandamus.
 {¶ 2} The facts of this case are not in dispute. In order to avoid a fiscal deficit, employee layoffs, and program modifications, the district decided to place a 9.7 mill combined operating/permanent improvement levy on the November 2, 2004 ballot. The district took the required statutory steps to properly authorize and prepare the levy for the ballot by obtaining the certification of the Franklin County Auditor on July 14, 2004, pursuant to R.C. 5705.217. The district also passed a resolution of necessity and a resolution to proceed as required by R.C. 5705.217, on July 12 and August 9, 2004, respectively. Each resolution was certified and attested to by the district treasurer. The resolutions and certifications are collectively hereafter referred to as the "resolution."
 {¶ 3} On August 10, 2004, the district treasurer placed the resolution, addressed to the board, into the district's interoffice mail. The resolution was picked up before noon on that day to be sent to the United States Postal Service for delivery to the board.
 {¶ 4} On the morning of August 20, 2004, the district received a telephone call from a board staff member reporting that the board had not received the anticipated resolution. The district treasurer hand-delivered a copy of the resolution to the board that same day. To date, no one has located the resolution that was picked up from the district's interoffice mail for delivery by the United States Postal Service to the board. The mailed resolution never arrived at the board, nor was the resolution ever returned by the United States Postal Service to the district.
 {¶ 5} On August 24, 2004, the board conducted its regularly scheduled meeting to consider the placement of a number of issues and candidates on the November 2004 ballot, including the district's tax levy. The board was advised by its counsel that strict compliance with the applicable election laws was required for the district's tax levy to be placed on the ballot. The board concluded that the district had failed to strictly comply with the statutory requirements and denied the placement of the district's tax levy on the November 2004 ballot. On August 26, 2004, the district filed a petition for writ of mandamus to compel the board to place the district's tax levy on the November 2, 2004 ballot. On September 14, 2004, the Ohio Secretary of State intervened in the case.
 {¶ 6} The standard for granting a writ of mandamus is well-established. Mandamus is warranted if: (1) relator has a clear legal right to the relief prayed for; (2) respondent is under a clear duty to perform the requested act; and (3) relator has no plain and adequate remedy at law. State ex rel. Miles v.McSweeney, 96 Ohio St.3d 352, 354, 2002-Ohio-4455, at ¶ 13;State ex rel. Citizens for Responsible Taxation v. Scioto Cty.Bd. of Elections (1993), 67 Ohio St.3d 134, 136; State ex rel.Hodges v. Taft (1992), 64 Ohio St.3d 1, 3. The district and board have stipulated that the district has no adequate remedy at law given that the election is less than two months away. We agree. In election cases, Ohio courts have been inclined to entertain original actions, even though alternative remedies such as declaratory judgment and injunction may be available, due to the protracted nature of such proceedings. State ex rel. Smartv. McKinley (1980), 64 Ohio St.2d 5, 6; State ex rel. Smith v.Sandusky Cty. Bd. of Elections, 155 Ohio App.3d 211,2003-Ohio-5856. Therefore, we must determine whether relator has proved the remaining two requirements for extraordinary relief in mandamus.
 {¶ 7} R.C. 5705.217 sets forth the procedure for a school district to submit the question of a combined levy for operating and permanent improvement expenses, such as the tax levy at issue here, to its electors. The first issue we must resolve is whether R.C. 5705.217 requires the district to certify and deliver the resolution to the board within 75 days of the November 2, 2004 election (i.e., by August 19, 2004). R.C. 5705.217(A) states in relevant part:
The board of education of a city, local, or exempted village school district, at any time by a vote of two-thirds of all its members, may declare by resolution that the amount of taxes that can be raised within the ten-mill limitation will be insufficient to provide an adequate amount for the present and future requirements of the school district; that it is necessary to levy an additional tax in excess of that limitation for the purposes of providing funds for current operating expenses and for the acquisition, construction, enlargement, renovation, and financing of permanent improvements; and that the question of the tax shall be submitted to the electors of the district at a special election. * * *
The resolution shall specify the date of holding the specialelection, which shall not be earlier than seventy-five days aftercertification of the resolution to the board of elections andshall be consistent with the requirements of section 3501.01 ofthe Revised Code. The resolution shall go into immediate effect upon its passage, and no publication of it is necessary other than that provided in the notice of election. The board ofeducation shall certify a copy of the resolution to the board ofelections immediately after its adoption. Section 5705.25 of the Revised Code governs the arrangements and form of the ballot for the submission of the question to the electors.
(Emphasis added.)
 {¶ 8} The district argues that the 75-day requirement referenced in R.C. 5705.217 does not mandate that the resolution be filed or delivered to the board at least 75 days before the election. Rather, the district contends the pertinent language merely requires the district to "certify" (i.e., pass) the resolution at least 75 days before the November 2, 2004 election. Because the resolution at issue here was passed and certified as accurate and complete by its treasurer on August 9, 2004, which was more than 75 days prior to the November 2, 2004 election date, the district argues it strictly complied with the requirements of R.C. 5705.217. We disagree.
 {¶ 9} In order to determine legislative intent, it is a cardinal rule of statutory construction that a court must first examine the language of the statute. State v. Jordan (2000),89 Ohio St.3d 488, 492. Here, the only reference to a 75-day requirement in R.C. 5705.217 is in the sentence that provides: "The resolution shall specify the date of holding the special election, which shall not be earlier than seventy-five days after certification of the resolution to the board of elections and shall be consistent with the requirements of section 3501.01 of the Revised Code." The only directive in this sentence is that the district specify in its resolution the date for holding the special election. The special election must be no earlier than 75 days after certification of the resolution to the board. Notably, nothing in this sentence directly requires the district to certify the resolution to the board by any particular time.
 {¶ 10} However, R.C. 5705.217 goes on to state that "[t]he board of education shall certify a copy of the resolution to the board of elections immediately after its adoption." Webster's Ninth New Collegiate Dictionary (1988) 568, defines the word "immediately" as "without interval of time." Thus, applied literally, R.C. 5705.217 requires almost simultaneous action by the district in passing the resolution and then certifying the resolution to the board. The sentence contains no reference to a 75-day requirement or to any other time requirement.
 {¶ 11} On its face, there is an inherent ambiguity with respect to the requirement in R.C. 5705.217 that the district certify the resolution to the board "immediately" upon its passage and the requirement that the special election be held no earlier than 75 days after certification of the resolution to the board. This ambiguity exists because the statute focuses on the date required for the special election — not a specific time requirement for certifying the resolution to the board. The following hypotheticals highlight the ambiguity. Would a resolution passed on a date 100 days before a special election but not certified to the board until 75 days before the special election be timely? The date of the special election contained in the resolution would comply with the statutory requirement, but the certification to the board would not have been immediate. On the other hand, what if the resolution was passed on a date 74 days before the special election and the resolution was immediately certified to the board of elections? The literal application of R.C. 5705.217 would indicate that the certification would be timely but the date of the special election contained in the resolution would be invalid. We find that R.C. 5705.217 is ambiguous because it does not set forth a clear time requirement for certifying a resolution to the board.
 {¶ 12} Although we find that the language in R.C. 5705.217 is ambiguous as to precisely when the district is required to certify the resolution to the board, we believe the ambiguity can be resolved by examining the statutory language in context. The process to get a tax levy on the ballot begins with the district's adoption of a resolution that specifies the date of the special election. Obviously, certification of the resolution to the board cannot take place until the district has adopted the resolution. Because R.C. 5705.217 requires at least 75 days between the date of the special election and the date the resolution is certified to the board, we conclude that the legislature intended to require districts to adopt a resolution and to certify it to the board of elections at least 75 days prior to the date of the special election.
 {¶ 13} This interpretation of R.C. 5705.217 is also consistent with the time requirement set forth in R.C.3501.02(F), which provides:
Any question or issue, except a candidacy, to be voted upon at an election shall be certified, for placement upon the ballot, to the board of elections not later than four p.m. of the seventy-fifth day before the day of the election.
Although arguably not controlling here because R.C. 5705.217 is more specific,[1] R.C. 3501.02(F) reflects a legislative intent to require certification of any question or issue to the board of elections for placement on the ballot at least 75 days in advance of the election.
 {¶ 14} In the case at bar, the district and board stipulate that the board did not receive the district's certification of the resolution until August 20, 2004 — 74 days before the November 2, 2004 election date. Therefore, the district's certification was untimely under R.C. 5705.217 unless we interpret the phrase "certify a copy of the resolution to the board of elections" as not requiring the element of delivery. The district argues that the word "certify" means only "to attest authoritatively" or "to confirm formerly as true, accurate, or genuine," but does not include the concept of delivery. The district points out that its treasurer certified the resolution as accurate and complete no later than August 10, 2004, which was more than 75 days before the November 2, 2004 election date. Therefore, the district argues it complied with R.C. 5705.217. We believe such an interpretation of R.C. 5705.217 is unreasonable.
 {¶ 15} Without delivery, certification of the resolution to the board would be meaningless because the board would be unaware of the district's resolution and, consequently, it would take no action to place the levy on the ballot. Therefore, we conclude that the phrase "certify a copy of the resolution to the board of elections" requires delivery of the resolution to the board. Because the district did not certify the resolution to the board until 74 days prior to the November 2, 2004 election date, the district failed to strictly comply with R.C. 5705.217.
 {¶ 16} The general rule in Ohio is that election laws are mandatory and require strict compliance unless the statute at issue expressly provides that substantial compliance is acceptable. State ex rel. Barletta v. Fersch,99 Ohio St.3d 295, 2003-Ohio-3629, at ¶ 17; State ex rel. Vickers v. SummitCty. Council, 97 Ohio St.3d 204, 2002-Ohio-5583, at ¶ 32; Stateex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01v. Lorain Cty. Bd. of Elections, 96 Ohio St.3d 308,2002-Ohio-4194, at ¶ 49. R.C. 5705.217 does not expressly permit substantial compliance with the certification requirement. Therefore, in the absence of a recognized exception, strict compliance is necessary.
 {¶ 17} The Supreme Court of Ohio has recognized a narrow exception to the general rule requiring strict compliance with election laws. The Supreme Court has applied a substantial compliance standard in those rare and unique circumstances where allowing substantial compliance does no harm to the purposes underlying the election requirement and the public interest is served. Stutzman v. Madison Cty. Bd. of Elections,93 Ohio St.3d 511, 514, 2001-Ohio-1624. ("`Absolute compliance with every technicality should not be required * * * unless such complete and absolute conformance to each technical requirement * * * serves a public interest and a public purpose.'") Stateex rel. Fite v. Saddler (1991), 62 Ohio St.3d 170, 172; Sternv. Cuyahoga Cty. Bd. of Elections (1968), 14 Ohio St.2d 175,180. Bd. of Edn. of Ashville Village School Dist. v. Briggs
(126), 114 Ohio St. 415, 420.
 {¶ 18} State ex rel. Stern v. Quattrone (1981),68 Ohio St.2d 9, is particularly instructive. In Quattrone, an elector of the city of Steubenville filed with the city auditor an initiative petition to propose a city ordinance to be placed on the ballot for the November 3, 1981 general election. Apparently, the certification as originally filed was defective, thereby requiring a correction less than 75 days before the election. Although the board of elections found the initiative petition "good and valid," it ruled that the issue could not placed on the November ballot because the initiative petition had not been certified within 75 days of the election. The relator brought an action in mandamus to compel the members of the board of elections to place the proposed ordinance on the November ballot.
 {¶ 19} In issuing the writ of mandamus, the court inQuattrone noted that the purpose behind the 75-day time period was to insure that concerned voters had an adequate amount of time to assess the issue or question. Because the initial attempted certification, although defective, was made 82 days before the election, the court ruled that ordering the proposed ordinance to be placed on the ballot under these circumstances did not undermine the public purpose of giving concerned voters adequate time to assess the proposed ordinance. In so holding, the court stated:
In light of the above, and the board's finding that the petition was in all other respects valid, the form of the certification becomes no more than a technicality; and its correction less than 75-days before the election does not defeat the purposes of the statute. This court has held that the right of initiative should not be denied "* * * on the basis of some mere technical irregularities which will not interfere with that right and disenfranchise the voters of the choice." State, exrel. Williams, v. Brown (1977), 52 Ohio St. 2d 13, 20. See, also, State, ex rel. Polcyn, v. Burkhart (1973),33 Ohio St. 2d 7.
Id. at 10.
 {¶ 20} The board and the Secretary of State argue that there are very strong public interests and purposes for requiring strict compliance with certification deadlines. Those public interests and purposes appear to be: (1) allowing sufficient time for the public to familiarize itself with the ballot issue; (2) allowing sufficient time for the board to fulfill its responsibilities in getting the question or issue on the ballot; (3) ensuring that the larger scheme of interrelated election time limits are not negatively impacted; and (4) ensuring certainty so that elections can be administered in a fair and efficient manner. We agree that these are valid justifications for certification deadlines. However, given the unique facts of this case, coupled with the absence of a clearly articulated deadline in R.C. 5705.217 for certifying resolutions to the board, we fail to see how the application of a substantial compliance standard negatively impacts these underlying principles.
 {¶ 21} First, the certification of the resolution to the board 74 days before the election (rather than 75) did not reduce the time the public had to familiarize itself with the ballot issue because the resolution authorizing the levy was adopted in a public meeting on August 9, 2004. Therefore, like inQuattrone, the public had more than 75 days to assess the issue. Moreover, the fact that the district certified the resolution to the board on August 20 rather than August 19 had no bearing on when the board considered the issue for placement on the ballot because the board did not meet until August 24 to consider the placement of issues and candidates on the ballot. Therefore, even if the district had certified the resolution to the board on August 19, the board still would have considered it on August 24.
 {¶ 22} Second, the board has stipulated that if a writ of mandamus is issued before September 21, 2004, the board can place the district's levy on the ballot without causing undue confusion among the voters or incurring additional expense, administrative inconvenience, or prejudice to the board. Therefore, the board can fulfill its responsibilities and the larger scheme of interrelated time limits would not be negatively impacted by the application of a substantial compliance standard.
 {¶ 23} Lastly, the public policy justification receiving the greatest emphasis by the board and the Secretary of State is the need for certainty so that elections can be administered in a fair and efficient manner. These parties argue that applying the more lenient substantial compliance standard for certification deadlines is a "slippery slope" because it opens the door for all sorts of untimely filings and creates uncertainty in the election process. We agree that the concept of certainty is a very important public policy justification for certification deadlines. However, we believe that allowing substantial compliance in those rare and unique circumstances where no harm is done to the purposes underlying the election requirement and there is a strong public policy justification for permitting substantial compliance does no injury to the fair and efficient administration of the election process. As previously indicated, given the unique facts before us, we fail to see how the application of a substantial compliance standard negatively impacts any of the principles underlying the certification requirement in R.C. 5705.217. In addition, there is a strong public policy justification for permitting substantial compliance in this case.
 {¶ 24} The district represents that the failure to include this levy on the ballot will have a devastating financial impact on the district. Neither the board nor the Secretary of State dispute this representation. The proposed levy would generate 23 million dollars per year and is projected to allow the district to operate without significant program or staffing cuts for approximately five years. If the levy does not appear on the November 2, 2004 ballot, voters will be disenfranchised.
 {¶ 25} Although we have concluded that the legislature intended to require districts to certify resolutions to the board of elections at least 75 days before the special election, we also believe it would be inherently unfair to require strict compliance with this requirement given the ambiguous way the certification deadline is expressed in R.C. 5705.217. This ambiguity further supports the application of a substantial compliance standard under the unique facts of this case.
 {¶ 26} We conclude that the district substantially complied with the certification requirement in R.C. 5705.217 when it certified and delivered a true and accurate copy of the resolution to the board on August 20, 2004. Therefore, the district has a clear legal right to have the tax levy placed on the November 2, 2004 ballot. We further find that the board abused its discretion in refusing to place the district's tax levy on the ballot for the November 2, 2004 election. Under the unique facts and circumstances presented here, the voters should not be denied their right to determine the fate of their school district. Therefore, we grant the requested writ of mandamus and order the board to place the tax levy on the November 2, 2004 ballot.
Writ of mandamus granted.
Lazarus, P.J., and Bowman, J., concur.
[1] R.C. 3501.02 sets forth the procedures for voting on questions or issues during a general election. R.C. 5705.217
specifically applies to district tax levies held at a special election. As a general rule, specific statutes prevail over general statutes. R.C. 1.51; State ex rel. Slagle v. Rogers,103 Ohio St.3d 89, 2004-Ohio-4354, at ¶ 14.