[Cite as *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 2014-Ohio-1395.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Zachary Scott, | : | |
| Relator, | : | |
| v. | : | No. 14AP-197 |
| Franklin County Board of Elections, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

D E C I S I O N

Rendered on March 31, 2014

*BRUNNER QUINN*, *Jennifer L. Brunner*, *Patrick M. Quinn*, and *Peter A. Contreras*, for relator.

*Mark W. Fowler,* Special Prosecutor, for respondent.

IN MANDAMUS

KLATT, J.

{¶ 1} Relator, Zachary Scott, brings this original action in mandamus seeking a writ ordering respondent, Franklin County Board of Elections ("Board"), to certify relator as a candidate for Member of the State Party Central Committee on the May 6, 2014 Democratic Party primary election ballot. For the following reasons, we deny relator's requested relief.

## I. Factual and Procedural Background

{¶ 2} On February 5, 2014, relator filed his Declaration of Candidacy for Member of the State Party Central Committee and his Petition for Candidacy containing nine signatures. Relator is seeking a place on the Democratic Party ballot for the May 6, 2014 primary election. Pursuant to R.C. 3513.05, the petition filed by such a candidate must be

signed by five qualified electors of the district, county, ward, township, or precinct within which electors may vote for such candidate.

{¶ 3}   The Board undertook a staff review of the petition to determine whether relator had obtained five qualifying signatures. The Board determined that the signatures appearing on lines 1, 4, 5, and 8 were valid but that the signatures on lines 2 and 6 were invalid due to the fact that those individuals resided outside the central committee district at issue. The Board further found that the signatures appearing on lines 3 and 9 were invalid because those electors had not registered at the address listed on the petition. With respect to the signature on line 7, purporting to be that of Tara Patel, the Board marked it with the notation "NG," and rejected it as a non-qualifying signature.  This left relator's petition with only four qualifying signatures, one short of the five required in R.C. 3513.05

{¶ 4}   At a public meeting held on February 18, 2014, the board announced that it had rejected relator's candidacy because his petition contained only four qualifying signatures.  The Board explained that it rejected Patel's signature because the signature appears in cursive writing, which does not match her signature on her 2004 voter registration card.   Patel printed her name on her 2004 voter registration card. (Complaint, exhibit F.)

{¶ 5}   Counsel for relator entered her appearance at the public meeting and objected to the Board's ruling. Counsel argued that Patel's signature on the petition was, in fact, her genuine signature as evidenced by her affidavit and the affidavit of petition circulator, Manasi Chatterji, both of which were proffered as evidence for the Board's consideration. (Complaint, exhibit C.) The Board refused to consider the affidavits and notified relator's counsel that relator had 10 days in which to file an appeal of the decision. On February 28, 2014, relator timely filed an appeal.

{¶ 6}   On March 4, 2014, the Board held a hearing on relator's appeal. At the hearing, relator called both Chatterji and Patel to give their testimony under oath. Chatterji testified that on the evening of February 4, 2014, she was asked to circulate a petition on relator's behalf.  According to Chatterji, she was told that the petition was to be completed and submitted by February 5, 2014.  Chatterji had never before circulated

such a petition and she consulted a colleague regarding the petition requirements. Chatterji recalled that the evening of February 4, 2014 was very cold and that the schools were closed that day due to weather. Chatterji identified the signatures appearing on lines 4 and 5 of the petition as those of her parents.

{¶ 7}  Chatterji testified that Patel is her next door neighbor and that on the evening of February 4, 2014, she presented the petition to Patel and instructed her to sign the document in cursive writing. She stated that she did so even though she was aware that Patel ordinarily signed her name in print rather than cursive. Chatterji believed that all signatures on the petition had to be written in cursive.

{¶ 8}  Patel testified that Chatterji came to her home on the evening of February 4, 2014, presented her with the petition, and asked her to sign it in cursive.  When counsel asked Patel if her signature appeared on the petition at line 7 she answered "yes." (Complaint, exhibit D, at 28.)  Patel testified that she signed the petition in cursive because Chatterji told her to do so.

{¶ 9}  The Board, by a vote of three to one, refused to certify relator's candidacy because his petition did not contain five qualifying signatures. The Board specifically found that Patel's signature on the petition was not a qualifying signature because it was not the signature used on her voter registration card on file with the Board.  As a result, relator fell one signature short of the five required, and the Board accordingly rejected relator's petition and refused to place his name on the ballot.

{¶ 10} Three day later, on March, 7 2014, relator filed his complaint in this court seeking a writ of mandamus ordering respondent to certify relator as a candidate for Member of the State Party Central Committee on the May 6, 2014 Democratic Party primary election ballot.

## II.  Requisites for a Writ of Mandamus; Standard of Review

{¶ 11} It is settled law that in order for a writ of mandamus to issue, relator must demonstrate that (1) he has a clear legal right to the relief prayed for; (2) respondents are under a clear legal duty to perform the acts requested; and (3) he has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). For this court to issue a writ of mandamus in a matter

stemming from a dispute before the board of elections, the candidate must "establish a clear legal right to certification of his candidacy and placement of his name on the [primary] election ballot, a corresponding clear legal duty on the part of the board of elections to certify his candidacy and place his name on the ballot, and the lack of an adequate remedy in the ordinary course of law." *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, ¶ 8.

{¶ 12} "In election cases, Ohio courts have been inclined to entertain original actions, even though alternative remedies such as declaratory judgment and injunction may be available, due to the protracted nature of such proceedings." *State ex rel. South-Western City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Elections*, 10th Dist. No. 04AP-869, 2004-Ohio-4893, ¶ 6, citing *State ex rel. Smart v. McKinley*, 64 Ohio St.2d 5, 6 (1980), and *State ex rel. Smith v. Sandusky Cty. Bd. of Elections*, 155 Ohio App.3d 211, 2003-Ohio-5856 (6th Dist.). In the absence of any forum for a direct appeal from the board of elections, and given the time constraints intrinsic to such disputes, mandamus is an appropriate remedy. *Id. See also State ex rel. Jamison v. Franklin Cty. Bd. of Elections*, 10th Dist. No. 12AP-507, 2012-Ohio-3436. Inasmuch as the May 6, 2014 primary election is fast approaching, relator has proven that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, ¶ 6, citing *State ex rel. Eshleman v. Fornshell*, 125 Ohio St.3d 1, 2010-Ohio-1175, ¶ 20.

{¶ 13} Turning to the remaining requirements, we note that in original actions challenging a decision of a board of elections, the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections*, 87 Ohio St.3d 132, 135-36 (1999), *overruled on other grounds, State ex rel. Commt. for the Referendum of Ord. No. 3844-02 v. Norris*, 99 Ohio St.3d 336, 2003-Ohio-3887. Although boards of elections "are the local authorities best equipped to gauge compliance with election laws," *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 231 (1997), a court considering an action in mandamus need accord no special deference

to a board of elections' interpretation of state election law. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, fn. 2.

{¶ 14} Fraud or corruption is not at issue in this case. We therefore review the matter to determine whether the Board abused its discretion or acted in clear disregard of election law by determining that relator's petition did not contain the required number of valid signatures. *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, ¶ 11.

## III. Analysis

{¶ 15} The general duties of the boards of elections in Ohio with respect to nominating petitions are set forth by R.C. 3501.11, providing, in pertinent part, as follows:

> Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following:
>
> * * *
>
> (K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers, and, after certification, return to the secretary of state all petitions and nomination papers that the secretary of state forwarded to the board[.]

{¶ 16} *See also Greene* at ¶ 20 (board of elections has duty to review, examine, and certify the sufficiency and validity of petition).

{¶ 17} Here, the Board's staff reviewed the petition and determined that it contained only four valid signatures, one short of the number required by law. R.C. 3513.05. The Board agreed with that assessment of the signatures. Of the five signatures on the petition that the Board rejected, the only one contested in this action is Patel's.

### A. Persons Signing a Nominating Petition Must Use Their "Legal Mark"

{¶ 18} R.C. 3501.011 entitled "Legal mark of registered elector," provides as follows:

> (A) Except as otherwise provided in divisions (B) and (C) of this section, * * * as used in the sections of the Revised Code relating to elections and political communications, whenever

a person is required to sign or affix a signature to a * * * nominating petition * * * or any other kind of petition, or to sign or affix a signature on any other document that is filed with or transmitted to a board of elections or the office of the secretary of state, "sign" or "*signature*" *means that person's written, cursive-style legal mark written in that person's own hand.*

(B) For persons who do not use a cursive-style legal mark during the course of their regular business and legal affairs, "sign" or "signature" means that person's other legal mark that the person uses during the course of that person's regular business and legal affairs that is written in the person's own hand.

(C) Any voter registration record requiring a person's signature shall be signed using the person's legal mark used in the person's regular business and legal affairs. For any purpose described in division (A) of this section, the legal mark of a registered elector shall be considered to be the mark of that elector as it appears on the elector's voter registration record.

(Emphasis added.)

{¶ 19} To summarize, these provisions require that a person who signs or affixes a signature on a nominating petition filed with a board of elections must use his or her "legal mark." R.C. 3501.011(A) and (B). The legal mark of a registered elector shall be considered to be the mark of that elector as it appears on the elector's voter registration record. R.C. 3501.011(C); *Greene*, quoting *State ex rel. Yiamouyiannis v. Taft*, 65 Ohio St.3d 205, 209 (1992) ("[B]oards of election are required to compare petition signatures with voter registration cards to determine if the signatures are genuine."). For persons who do not use a cursive-style legal mark during the course of their regular business and legal affairs, "sign" or "signature" means that person's other legal mark that the person uses during the course of that person's regular business and legal affairs that is written in the person's own hand. R.C. 3501.011(B).

{¶ 20} The dispositive issue in this case is not whether Patel signed the petition in her own hand. The record strongly suggests that all the Board members believed that she signed the petition. Rather, the dispositive issue is whether Patel used her legal mark to

sign relator's petition as required by Ohio law. We conclude that the Board did not abuse its discretion in finding that Patel did not use her legal mark in signing the petition and, therefore, it could not be counted as a qualifying signature.

### B. Patel Did Not Sign Relator's Petition with Her Legal Mark

{¶ 21} There is no question that Patel signed her 2004 voter registration card with her printed name. Patel's 2004 voter registration card is on file with the Board. (Complaint, exhibit F.) The testimony at the March 4, 2014 hearing established that Patel uses her printed name as her legal mark. (Complaint, exhibit D, 23.) In fact, Patel used her printed name when she signed the affidavit offered as evidence at the February 18, 2014 public meeting. (Complaint, exhibit C.) Accordingly, pursuant to R.C. 3501.011(B) and (C), Patel's legal mark for purposes of the petition at issue in this case is her printed name. It is undisputed that Patel did not print her name on the petition but, instead, signed her name in cursive writing. Therefore, she did not use her legal mark when she signed relator's petition.

{¶ 22} In light of the clear and express requirements in R.C. 3501.011 and the undisputed facts set forth above, we conclude that the Board did not abuse its discretion in rejecting Patel's signature on relator's petition because Patel did not use her legal mark when she signed the petition. Similarly, we conclude that given Patel's failure to use her legal mark on the petition, the Board did not have a clear legal duty to certify relator's petition. Therefore, relator failed to establish all the elements needed for relief in mandamus.

{¶ 23} We acknowledge the importance of voting and active participation in our form of government, and that if the Ohio Constitution or statutes establishing a requirement for placing issues on election ballots create doubt, such doubt should be resolved in favor of providing the citizens with access to the ballot. *State ex rel. Lewis v. Hamilton Cty. Bd. of Elections,* 74 Ohio St.3d 1201, 1202 (1995) (Moyer, C.J., concurring). This principle of statutory construction does not apply when legal requirements are clear and unambiguous.

{¶ 24} Here, the requirements of R.C. 3501.011 are unambiguous. A person who signs or affixes a signature on a nominating petition filed with a board of elections must

use his or her legal mark. The legal mark of a registered elector is the mark of that elector as it appears on the elector's voter registration record. Patel did not use her legal mark when she signed relator's petition. Therefore, her signature on relator's petition did not comply with the express requirements of R.C. 3501.011.

{¶ 25} Relator points to the Board's investigatory powers set forth in R.C. 3519.18 in arguing that the Board had a clear legal duty to accept Patel's signature as a qualifying signature because it held a hearing and there was no evidence contradicting her testimony. This argument misses the point, particularly in the context of mandamus, because it ignores the language in R.C. 3501.011. The dissent suggests the requirement that electors use their legal mark on nominating petitions is a mere technicality. We note that there are many "technicalities" in our election law, including the requirement that electors must be registered at the address listed on the petition—a "technical" requirement that relator does not challenge here even though that is the reason two other signatures on relator's ballot were rejected. Our state legislature has had to balance many competing interests in fashioning our election laws. We also note that the board of elections has the responsibility to protect the integrity of the electoral process and to comply with election laws that often require abbreviated time periods to review a large numbers of signatures. *State ex rel Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, ¶ 37; *State ex rel. Auken v. Blackwell*, 10th Dist. No. 04AP-952, 2004-Ohio-5355, ¶ 13 ("Election law necessarily must incorporate a rather precarious balance between the need to conduct elections in a fair, timely, and orderly manner, and yet provide due process to persons affected by a decision undertaken pursuant to election law."). The requirement that an individual must use his or her legal mark, which is easily identifiable and on record with the board of elections, allows the board of elections to quickly determine the validity of signatures on a petition and facilitates the fair and timely decisions that must be made in this process. Given the clear language in R.C. 3501.011, relator has not established that the Board had a clear legal duty to certify relator's petition as required for relief in mandamus.

## IV. Conclusion

{¶ 26} We conclude that the Board did not abuse its discretion or act in clear disregard of election law by determining that relator's petition did not contain the required number of valid signatures. Accordingly, relator has not established a clear legal right to certification of his candidacy or a clear legal duty on the part of the Board to certify his candidacy. For these reasons, we deny relator's request for a writ of mandamus.

*Writ of mandamus denied.*

BROWN, J., concurs.
CONNOR, J., dissents.

CONNOR, J., dissenting.

{¶ 27} The specific question before us is whether the Board of Elections (Board") abused its discretion when it determined that an elector's cursive signature was not valid, even though both the circulator and the elector testified, under oath, that the elector signed the petition in her own hand. I believe that the Board abused its discretion when it disregarded credible, uncontroverted testimony that the elector signed the petition. Because the majority holds otherwise, I respectfully dissent.

## I. Facts and Procedural Posture

{¶ 28} On February 5, 2014, relator filed his Declaration of Candidacy for Member of the State Party Central Committee, and his Petition for Candidacy containing nine signatures. Relator is seeking a place on the Democratic Party ballot for the May 6, 2014 primary election. Pursuant to R.C. 3513.05, the petition filed by such a candidate must contain "five qualified electors" qualifying signatures.

{¶ 29} The Board undertook a staff review of the petition to determine whether relator had obtained five qualifying signatures. The Board determined that the signatures appearing on lines 1, 4, 5, and 8 were valid but that the signatures on lines 2 and 6 were invalid due to the fact that those individuals resided outside the central committee district at issue. The Board further found that the signatures appearing on lines 3 and 9 were invalid because those electors had not registered at the address listed on the petition.

With respect to the signature on line 7, purporting to be that of Tara Patel, the Board found it to be "not genuine" and marked it with the notation "NG."[1]

{¶ 30} At a public meeting held on February 18, 2014, the Board announced that it had rejected relator's candidacy because his petition contained only four qualifying signatures. The Board explained that it considered the signature of Patel as "not genuine" because the signature appears in cursive writing, which does not match her signature on her 2004 voter registration card. In 2004, Patel printed her name on the voter registration card. (Complaint, exhibit F.)

{¶ 31} Counsel for relator entered her appearance at the public meeting and objected to the Board's ruling. Counsel argued that Patel's signature on the petition was, in fact, her genuine signature as evidenced by her affidavit and the affidavit of petition circulator, Manasi Chatterji, both of which were proffered as evidence for the Board's consideration. (Complaint, exhibit C.) The Board refused to consider the affidavits and notified relator's counsel that relator had ten days in which to file an appeal of the decision. On February 28, 2014, relator timely filed an appeal.

{¶ 32} On March 4, 2014, the Board held a hearing on relator's appeal. At the hearing, relator called both Chatterji and Patel to give their testimony under oath. Chatterji testified that she is member of the Asian-Indian community and that English is not her first language. She stated that on the evening of February 4, 2014, she was asked to circulate a petition on relator's behalf. According to Chatterji, she was told that the petition was to be completed and submitted by February 5, 2014. Chatterji had never before circulated such a petition and she consulted a colleague regarding the petition requirements. Chatterji recalled that the evening of February 4, 2014, was very cold and that the schools were closed that day due to weather. Chatterji identified the signatures appearing on lines 4 and 5 of the petition as those of her parents, who are also members of the Asian-Indian community.

---

[1] The term "not genuine" is defined as follows: "The signature on the petition does not appear to be the genuine signature of the person whose signature it purports to be, compared to the signature on file with the board of elections as of the date the board checks the petition." *See* Secretary of State Directive 2014-02.

{¶ 33} Chatterji testified that Patel is her next door neighbor and that Patel is also a member of the Asian-Indian community. According to Chatterji, on the evening of February 4, 2014, she presented the petition to Patel and instructed her to sign the document in cursive writing. She stated that she did so even though she was aware that Patel ordinarily signed her name in print rather than cursive. Chatterji understood that all signatures on the petition were to be written in cursive.

{¶ 34} Patel testified that Chatterji came to her home on the evening of February 4, 2014, presented her with the petition, and asked her to sign it in cursive. It is clear from the transcript that Patel's English language skills are limited.  In fact, on one occasion, Patel indicated that she did not understand Board member Sinnott's question by stating: "I no good English." (Complaint, exhibit D, 32.) Nevertheless, when counsel asked Patel if her signature appeared on the petition at line 7 she answered "yes." (Complaint, exhibit D, 28.) Patel testified that she signed the petition in cursive because Chatterji told her to do so.

{¶ 35} The Board, by a vote of three-to-one, refused to certify relator's candidacy because his petition did not contain five qualifying signatures. The Board specifically found that Patel's signature on the petition did not appear to be her genuine signature when compared to her signature on file with the Board.  As a result of the vote, relator fell one signature short of the five required for him to access to the ballot.

## II. Requisites for a Writ of Mandamus; Standard of Review

{¶ 36} It is settled law that in order for a writ of mandamus to issue, relator must demonstrate that: (1) he has a clear legal right to the relief prayed for; (2) respondents are under a clear legal duty to perform the acts requested; and (3) he has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). For this court to issue a writ of mandamus in a matter stemming from a dispute before the board of elections, the candidate must "establish a clear legal right to certification of his candidacy and placement of his name on the [primary] election ballot, a corresponding clear legal duty on the part of the board of elections to certify his candidacy and place his name on the ballot, and the lack of an

adequate remedy in the ordinary course of law." *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, ¶ 8.

{¶ 37} "In election cases, Ohio courts have been inclined to entertain original actions even though alternative remedies such as declaratory judgment and injunction may be available, due to the protracted nature of such proceedings." *State ex rel. South-Western City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Elections*, 10th Dist. No. 04AP-869, 2004-Ohio-4893, ¶ 6, citing *State ex rel. Smart v. McKinley*, 64 Ohio St.2d 5, 6 (1980), and *State ex rel. Smith v. Sandusky Cty. Bd. of Elections*, 155 Ohio App.3d 211, 2003-Ohio-5856 (6th Dist.). In the absence of any forum for a direct appeal from the board of elections, and given the time constraints intrinsic to such disputes, mandamus is an appropriate remedy. *Id. See also State ex rel. Jamison v. Franklin Cty. Bd. of Elections*, 10th Dist. No. 12AP-507, 2012-Ohio-3436. Inasmuch as the May 6, 2014 primary election is fast approaching, relator has proven that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth,* 131 Ohio St.3d 55, 2012-Ohio-69, citing *State ex rel. Eshleman v. Fornshell*, 125 Ohio St.3d 1, 2010-Ohio-1175, ¶ 20.

{¶ 38} Turning to the remaining requirements, in original actions challenging a decision of a board of elections, the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections*, 87 Ohio St.3d 132, 135-36 (1999). Although boards of elections "are the local authorities best equipped to gauge compliance with election laws," *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 231 (1997), a court considering an action in mandamus need accord no special deference to a board of elections' interpretation of state election law. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, fn. 2.

{¶ 39} Fraud or corruption is not at issue in this case. The question is whether the board of elections abused its discretion or acted in clear disregard of election law when it refused to certify relator's petition. In answering that question, a court of appeals should

accord the requisite deference to the board's application of the law while giving less deference to the board's interpretation thereof. *See Jamison.*

### III. Disposition

{¶ 40} The general duties of the boards of election in Ohio with respect to nominating petitions are set forth by R.C. 3501.11, providing, in pertinent part, as follows:

> Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following:
>
> * * *
>
> (K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers, and, after certification, return to the secretary of state all petitions and nomination papers that the secretary of state forwarded to the board[.]

{¶ 41} Pursuant to R.C. 3501.39, it is the board's duty to determine, first, whether any petition is facially valid, and second, whether the petition should be invalidated for certain enumerated reasons:

> (A) The secretary of state or a board of elections shall accept any petition described in section 3501.38 of the Revised Code unless one of the following occurs:
>
> * * *
>
> (3) The candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513 of the Revised Code, or any other requirements established by law.

{¶ 42} Here, the Board performed a staff review of the petition and determined that it contained only four valid signatures, one short of the number required by law. R.C. 3501.011 entitled "Legal mark of registered elector," provides as follows:

> (A) Except as otherwise provided in divisions (B) and (C) of this section, * * * as used in the sections of the Revised Code relating to elections and political communications, whenever a person is required to sign or affix a signature to a * * * nominating petition * * * or any other kind of petition, or to sign or affix a signature on any other document that is filed

with or transmitted to a board of elections or the office of the secretary of state, "sign" or "*signature*" *means that person's written, cursive-style legal mark written in that person's own hand.*

(B) *For persons who do not use a cursive-style legal mark during the course of their regular business and legal affairs, "sign" or "signature" means that person's other legal mark that the person uses during the course of that person's regular business and legal affairs that is written in the person's own hand.*

(C) *Any voter registration record requiring a person's signature shall be signed using the person's legal mark used in the person's regular business and legal affairs. For any purpose described in division (A) of this section, the legal mark of a registered elector shall be considered to be the mark of that elector as it appears on the elector's voter registration record.*

(Emphasis added.)

{¶ 43} There is no question that Patel signed her 2004 voter registration card by affixing her printed name. Patel's 2004 voter registration card is on file with the Board. (Complaint, exhibit F.)  The testimony at the March 4, 2014 hearing established that Patel uses her printed name as her legal mark. (Complaint, exhibit D, 23.)  In fact, Patel used her printed name when she signed the affidavit offered as evidence at the February 18, 2014, public meeting. (Complaint, exhibit C.).[2]  Accordingly, by operation of R.C. 3501.011(C), Patel's "signature" for purposes of the nominating petition at issue in this case is her printed name.

{¶ 44} However, R.C. 3501.38, which sets forth the specific requirements for a Declaration of Candidacy, provides, in relevant part:

(B) Signatures shall be affixed in ink. Each signer may also print the signer's name, so as to clearly identify the signer's signature.

---

[2] Patel's signature on her affidavit includes the middle initial "C" which does not appear on the voter registration card.

{¶ 45} Relator argues that pursuant to R.C. 3501.38, a signer's printed name *may be* used for identification purposes but that the signer's cursive signature is still acceptable. The relevant directive issued by the Secretary of State arguably supports relator's argument. Directive 2014-02 ("Dir. 2014-02"), section II.B., pertaining to "Signatures," provides in relevant part that "[e]ach signature <u>must be</u> an original signature of that voter [and] must match the signature on file with the board of elections." (Emphasis sic.) The same directive also states: "[f]or identification purposes, the elector may print his or her name on the petition *in addition* to signing in cursive his or her name to the petition. A printed signature alone, with no cursive signature, is allowed only if the elector's signature on file with the Board is also printed." (Emphasis sic.)

{¶ 46} R.C. 3501.11(P) requires the board of elections to "[p]erform other duties as prescribed by law or the rules, directives, or advisories of the secretary of state." The parties agree that R.C. 3501.11(P) requires the board of elections, in assessing the validity of the signatures on relator's petition, to follow the Secretary of State Directive for Statewide Petitions for the 2014 primary election ballot, issued January 30, 2014. In my view, Dir. 2014-02 creates a strong presumption that a signature on the petition is not the genuine signature of the elector if it does not appear to be the same as the signature on file with the board of elections.

{¶ 47} Two of the three Board members who voted to reject relator's appeal, gave their reason for doing so on the record as follows:

> MEMBER HAAS: Based on the fact I do not believe, just as counsel mentioned that X signature, when a -- even if a circulator told them to sign that to be accepted, I think -- I think that along that questioning and along with past practice with this Board, that the obligation of the committees that file a petition on behalf of candidacy it's the committee's obligation to provide five signatures that match those on the record, and so I would move that we not accept the appeal.
>
> * * *
>
> MEMBER SINNOTT: I would second it for this reason: It may be that there was confusion or language barrier or some erroneous instruction. I don't know what prompted the signature that appears on the petition at line 7. In no respect

would that be the signature that the Board knows to be the signature of Tara Patel.  But there is no match and for that reason I second Mr. Haas's motion.

(Complaint, exhibit D, Tr. 43-44).

{¶ 48} Although relator now argues that there are similarities between Patel's printed name on the 2004 voter registration card and her cursive signature on the petition, I do not believe that the Board abused its discretion in concluding that the two signatures do not match.  Patel's printed name and her cursive signature are clearly different.

{¶ 49} R.C. 3519.18 states that "[i]n the performance of the duties required of the boards of elections, the boards *may* subpoena witnesses, compel the production of books, records, and other evidence, administer oaths, and take evidence." (Emphasis added.) The transcript of proceedings before the Board shows that the Board members chose to conduct a hearing on the matter and that they requested live witness testimony. The Board did not need to hold an evidentiary hearing to determine whether Patel's signature on the 2014 petition matched the printed name on the 2004 voter registration card. The Board had already made that determination by simply comparing the two signatures and there was no chance that the proposed witness testimony could show otherwise. Indeed, I perceive no reason for the Board to hold an evidentiary hearing on March 4, 2014, other than to determine whether Patel's signature on the petition was genuine, even though it appears in cursive.

{¶ 50} The parties agree that the Board made no specific credibility determination regarding either of the witnesses who testified at the March 4, 2014 hearing.  However, the comments made by the Board members leave little doubt that they believed the testimony. In fact, Board member Haas stated that the reason Patel placed her cursive signature on the petition was Chatterji's "honest mistake" of instructing her to do so. (Complaint, exhibit D, 30.) Additionally, when relator's counsel finished her examination of Patel, she asked if the members had questions, to which Haas responded: "No questions. I'm just making a point again we appreciate very much people who particularly make an effort to come down here today in addition to participating and *I have no doubt*

*that this is your name and I don't question that.*" (Emphasis added.) (Complaint, exhibit D, Tr. 29.)

{¶ 51} The issue in this case is similar to the issue addressed by the Supreme Court of Ohio in *State ex rel. Schwarz v. Hamilton Cty. Bd. of Elections*, 173 Ohio St. 321 (1962). In that case, the petition circulator averred that there were 27 signatures on a petition when, in fact, there were 28. At a subsequent hearing before the Hamilton County Board of Elections, the circulator testified, under oath, that he knew one of the signers was a nonresident of the county and, therefore, he counted only 27 signatures. The Hamilton County Board of Elections disregarded the uncontroverted testimony of the circulator and rejected the petition. The Supreme Court of Ohio held that the board's ruling was "too technical, unreasonable and arbitrary" and "an abuse of discretion * * * upon the facts which [the board] had in its possession." *Id.* at 323.

{¶ 52} Here, the dispute also involves just one signature, and the validity of that one signature determines relator's access to the May 6, 2014, Democratic Party primary ballot. While the Board's policy creates a strong presumption that a signature on the petition is not the genuine signature of the elector if it does not appear to be the same as the signature on file with the Board, such a presumption is not conclusive, and it may be overcome by the uncontroverted testimony of both the circulator and the elector that the signature on the petition is the genuine signature of the elector. The Board chose to conduct an evidentiary hearing to determine whether Patel's signature on the petition was genuine and the Board instructed relator to present live witness testimony on the issue. Having done so, the Board abuses its discretion when it disregards credible and uncontroverted evidence of genuineness and rejects the candidate's petition for the lack of a fifth and final qualifying signature.

{¶ 53} Respondent counters that it is impractical for the board of elections to hear and consider the testimony of every elector whose signature is deemed invalid pursuant to a statute, directive, or board policy. Indeed, member Haas summed up the rational for relevant Board policy in his remarks at the March 4, 2014 hearing:

> If we have a million signature petition drive with massive fraud, we could never verify -- we would be tied up forever to verify signatures that don't match and the entire process could

be shut down and that's why there was a requirement * * *.
And so, you know, the signature on the petition and the
signature on record clearly do not match.

(Complaint, exhibit D, Tr. 36.)

{¶ 54} The obvious reason for the Board's policy is to alleviate the stifling administrative burden of verifying the genuineness of every questionable signature on a petition. As the majority ably notes, the policy allows the Board to quickly determine the validity of signatures in order to facilitate a fair and timely decision.[3] The majority also acknowledges that the Board must necessarily balance the need to conduct elections in a fair, timely, and orderly manner, and yet provide due process to persons affected by their decisions. I agree. In this case, the dispute involves the validity of just one signature, the Board chose to hear live testimony on the issue, and the evidence of genuineness is uncontroverted. Even though the Board was able to quickly determine that Patel's cursive signature was genuine, they applied the rule of convenience at the expense of due process.

{¶ 55} It is clear from the transcript that Board members Haas and Sinnott believed that past practices required the Board to find that Patel's signature was not genuine even though the Board had heard uncontroverted evidence that she signed the petition in her own hand. In my opinion, once the Board exercised its discretionary authority to hear witness testimony on a matter, it did not have the discretion to completely disregard such testimony in determining whether relator's petition contained five qualifying signatures.

{¶ 56} "Courts must tread lightly when considering outcomes that would deny the voting public an opportunity to speak on a candidate or issue: 'Active participation in the election process is the foundation of democracy. Whether selecting a candidate for public office or deciding issues of public concern, voting is a basic right without which all other rights become meaningless. It follows that where the Ohio Constitution or statutes

---

[3] A nominating petition for the offices of governor and lieutenant governor, "shall be signed by no less than five thousand qualified electors"; 1,000 qualifying signatures are required "[i]f the declaration of candidacy declares a candidacy which is to be submitted to electors throughout the entire state"; and 500 qualifying signatures are required for a "declaration of candidacy declares a candidacy for party nomination or for election as a candidate of a minor party." *See* R.C. 3513.257(A); 3513.05.

establishing the requirement for placing issues on election ballots create doubt, such doubt should be resolved in favor of providing the citizens with access to the ballot.' " *Jamison* at ¶ 23, quoting *State ex rel. Lewis v. Hamilton Cty. Bd. of Elections,* 74 Ohio St.3d 1201, 1202 (1995) (Moyer, C.J., concurring).

{¶ 57} Given the unique circumstances of this case, the Board abused its discretion when it determined that Patel's signature was not genuine in contravention of the evidence before the Board conclusively establishing that the elector signed the petition in her own hand.

{¶ 58} For the foregoing reasons, I would grant the requested writ of mandamus.

———————————————